**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS (Chicago)**

| | |
|---|---|
| In re the matter of: | CASE NO. 17-01862 |
| JULIUS L JONES | CHAPTER 13 |
| Debtor(s). | JUDGE HOLLIS |

**NOTICE OF MOTION AND CERTIFICATE OF SERVICE**

TO:

**JULIUS L JONES**
**6 KINGSBROOKE CT**
**BOLINGBROOK, IL 60440**
Via Regular Mail

**TANESHA S JONES**
**6 KINGSBROOKE CT.**
**BOLINGBROOK, IL 60440**
Via Regular Mail

**GLENN B STEARNS**
**CHAPTER 13 TRUSTEE**
**801 WARRENVILLE ROAD SUITE 650**
**LISLE, IL 60532**
Via Electronic Mail

**JOSEPH S DAVIDSON**
**SULAIMAN LAW GROUP, LTD.**
**2500 S. HIGHLAND AVE, SUITE 200**
**LOMBARD, IL 60148**
**Email:** jdavidson@sulaimanlaw.com
**Attorney for Debtor(s)**
Via Electronic Mail

**PATRICK S LAYNG**
**OFFICE OF THE U.S. TRUSTEE,**
**REGION 11**
**219 S DEARBORN ST**
**ROOM 873**
**CHICAGO, IL 60604**
Via Electronic Mail

On **JULY 20, 2018**, at **10:45 A.M**, I shall appear before the Honorable Judge HOLLIS, or any Bankruptcy Judge sitting in her stead, **in the Courtroom located at Joliet City Hall, 150 West Jefferson Street, 2nd Floor, Joliet, Illinois 60432**, and shall then and there move to present the attached Motion to Dismiss Case.

/s/ Douglas C. Giese
Attorney for BBR INVESTMENTS LLC

**CERTIFICATE OF SERVICE**

The undersigned certifies that I caused this Notice and the attached Motion to Modify Automatic Stay to be served by mailing a copy to each person to whom it is directed, at the addresses shown above, and depositing same in the U.S. mail at 29 N. Wacker Drive, Chicago, Illinois 60606, with proper postage prepaid, or via electronic mail as indicated, at or before 5:00 P.M. on _____.

/s/ Douglas C. Giese
Attorney for BBR INVESTMENTS LLC

MARKOFF LAW LLC
Attorney for BBR INVESTMENTS LLC
29 N. Wacker Drive # 1010
Chicago, IL 60606
Tel. (312) 698-7300 - Fax. (312) 698-7399
service@markofflaw.com

## IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS (Chicago)

In re the matter of:

JULIUS L JONES

Debtor(s).

CASE NO. 17-01862

CHAPTER 13

JUDGE HOLLIS

### <u>MOTION TO DISMISSS CASE</u>

NOW COMES Creditor BBR INVESTMENTS LLC, assignee of American Bank, FSB, assignee of The CIT Group/Consumer Finance, Inc., a secured creditor, by and through its attorneys, Markoff Law LLC, and moves this Honorable Court for entry of an Order Dismissing Case, and in support thereof respectfully represents as follows:

1.     On January 23, 2017, Debtor JULIUS L JONES and co-Debtor TANESHA S JONES filed a petition for relief under Chapter 13 of the Bankruptcy Code.

2.     A Modified Chapter 13 Plan was confirmed on May 12, 2017 (the "Modified Plan", a true and correct copy of which is attached hereto as Exhibit "A", and incorporated as if fully restated).

3.     BBR INVESTMENTS LLC, assignee of American Bank, FSB, assignee of The CIT Group/Consumer Finance, Inc., is a creditor of the Debtors by virtue of a Home Equity Line of Credit secured by a Mortgage against Real Property located at 6 Kingsbrook Court, Bolingbrook, Illinois, recorded with the Will County Recorder of Deeds on February 15, 2007 as Document No. R 2007026024.  True and correct copies of the Note and Mortgage are attached hereto as Exhibit "B" and Exhibit "C", and are incorporated as if fully restated.

4.     Debtors have defaulted on their obligations to BBR INVESTMENTS LLC, assignee of American Bank, FSB, assignee of The CIT Group/Consumer Finance, Inc., in that they have failed to make the direct payments under the terms of the Note and Mortgage Agreement, as outlined in the Modified Plan. *See* Exhibit "A" at Section C – Direct payment of claims by debtor.

5.     As of April 18, 2018, Debtors owe BBR INVESTMENTS LLC, assignee of American Bank, FSB, assignee of The CIT Group/Consumer Finance, Inc., the sum of $85,068.02, consisting of $76,681.59 for Outstanding Principal, and $8,386.43 for Accrued Interest, plus accruing interest and attorneys' fees.

6.     Creditor is not receiving payment on the Note secured against the Real Property, despite the fact that Debtors continue to use the Real Property.

7.     Good cause exists to dismiss this case pursuant to 11 USC Section 1307(c)(1).

8.     The Debtors have made promises to make payments to this Creditor, but have failed to make those payments.

9.     BBR INVESTMENTS LLC, assignee of American Bank, FSB, assignee of The CIT Group/Consumer Finance, Inc., will suffer irreparable injury, harm and damage should it be delayed in foreclosing its security interest.

10.     The Creditor requires dismissal of this action so it can foreclose against the Debtors Real Property in Circuit Court.

11.     That no cause exists to stay the execution of this order.

WHEREFORE, BBR INVESTMENTS LLC, assignee of American Bank, FSB, assignee of The CIT Group/Consumer Finance, Inc., prays that this Honorable Court enter an Order dismissing the case pursuant to 11 USC Sec. 1307(c), and for such other and further relief as this court deems just and proper.

BBR INVESTMENTS LLC, assignee of
American Bank, FSB, assignee of The
CIT Group/Consumer Finance, Inc.,

By: /s/ Douglas C. Giese
One of its Attorneys

MARKOFF LAW LLC
Attorneys for BBR INVESTMENTS LLC
Douglas C. Giese (ARDC #6242975)
29 N. Wacker Drive, #1010
Chicago, IL 60606
Tel. (312) 698-7300 - Fax. (312) 698-7399
service@markofflaw.com

339302

# EXHIBIT "A"

Case 17-01862    Doc 65    Filed 07/03/18    Entered 07/03/18 10:40:05    Desc Main
Document    Page 2 of 30
Case 17-01862    Doc 62-1    Filed 05/14/18    Entered 05/14/18 15:45:21    Desc Exhibit
Page 6 of 34
Case 17-01862    Doc 41    Filed 05/04/17    Entered 05/04/17 14:05:08    Desc Main
Document    Page 1 of 5

Model Plan
11/22/2013

Trustee:  ☐ Marshall    ☐ Meyer
          ☒ Stearns      ☐ Vaughn

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS

In re:                    )    Case No. 17-01862
                          )
Julius L Jones            )
Tanesha S Jones           )
                          )
        Debtors.          )    Modified Chapter 13 Plan, dated 5/4/17

■    A check in this box indicates that the plan contains special provisions, set out in Section G. Otherwise, the plan includes no provisions deviating from the model plan adopted by the court at the time of the filing of this case.

**Section A.**
*Budget items*

1. As stated in the debtor's Schedule I and J, (a) the number of persons in the debtor's household is _5_; (b) their ages are _44, 43 , 12 , 13 , 21_; (c) total household monthly income is $ _11,555.41_; and (d) total monthly household expenses are $ _7,035.12_, leaving $ _4,520.29_ available monthly for plan payments.

2. The debtor's Schedule J includes $ _83.33_ for charitable contributions; the debtor represents that the debtor made substantially similar contributions for _12_ months prior to filing this case.

**Section B.**
*General items*

1. The debtor assumes all unexpired leases and executory contracts listed in Section G of this plan; all other unexpired leases and executory contracts are rejected. Both assumption and rejection are effective as of the date of plan confirmation.

2. Claims secured by a mortgage on real property of the debtor, set out in Section C or in Paragraph 2 of Section E of this plan, shall be treated as follows:

(a) *Prepetition defaults.* If the debtor pays the cure amount specified in Paragraph 5 of Section E, while timely making all required postpetition payments, the mortgage will be reinstated according to its original terms, extinguishing any right of the mortgagee to recover any amount alleged to have arisen prior to the filing of the petition.

(b) *Costs of collection.* Costs of collection, including attorneys' fees, incurred by the holder after the filing of this bankruptcy case and before the final payment of the cure amount specified in Paragraph 5 of Section E may be added to that cure amount pursuant to order of the court on motion of the holder.

3. The holder of any claim secured by a lien on property of the estate, other than a mortgage treated in Section C or in Paragraph 2 of Section E, shall retain the lien until the earlier of (a) payment of the underlying debt determined under nonbankruptcy law, or (b) discharge under 11 U.S.C. § 1328, at which time the lien shall terminate and be released by the creditor.

4. The debtor shall retain records, including all receipts, of all charitable donations listed in Schedule J.

1

Case 17-01862   Doc 65   Filed 07/03/18   Entered 07/03/18 10:40:05   Desc Main
Document   Page 7 of 34

Case 17-01862   Doc 62-1   Filed 05/14/18   Entered 05/14/18 15:45:21   Desc Exhibit
Page 3 of 50

Case 17-01862   Doc 41   Filed 05/04/17   Entered 05/04/17 14:05:08   Desc Main
Document   Page 2 of 5

**Section C.**
*Direct payment of claims by debtor*

☐ The debtor will make no direct payments to creditors holding prepetition claims. /or/
☒ The debtor will make current monthly payments, as listed in the debtor's Schedule J—increased or decreased as necessary to reflect changes in variable interest rates, escrow requirements, collection costs, or similar matters—directly to the following creditors holding claims secured by a mortgage on the debtor's real property.

| Creditor: | BBR Investments | , monthly payment $ | 399.38 |
| Creditor: | Chase Mortgage | , monthly payment $ | 2,043.67 |

**Section D.**
*Payments by debtor to the trustee; plan term and completion*

1. *Initial plan term.* The debtor will pay to the trustee $ 1,570.00 monthly for 60 months [and $ monthly for an additional months], for total payments, during the initial plan term, of $ 118,200.00 . [Enter this amount on Line 1 of Section H.]

2. *Adjustments to initial term.* If the amount paid by the debtor to the trustee plan term does not permit payment of general unsecured claims as specified in 9 of Section E, then the debtor shall make additional monthly payments, durin plan term allowed by law, sufficient to permit the specified payments.

3. *Plan completion.* ☒ The plan will conclude before the end of the initial term Paragraph 2, only at such time as all allowed claims are paid in full, with any by the plan /or/
☐ The plan will conclude before the end of the initial term at any time that th trustee the full amounts specified in Paragraphs 1 and 2.

**Section E.**
*Disbursements by the trustee*

The trustee shall disburse payments received from the debtor under this plan

1. *Trustee's fees.* Payable monthly, as authorized; estimated at 5.00% of plan during the initial plan term, totaling $ 5,910.00 . [Enter this amount on Line 2a of Section H.]

2. *Current mortgage payments.* Payable according to the terms of the mortgage, as set forth below, beginning with the first payment due after the filing of the case. Each of these payments shall be increased or decreased by the trustee as necessary to reflect changes in variable interest rates, escrow requirements, or similar matters; the trustee shall make the change in payments as soon as practicable after receipt of a notice of the change issued by the mortgage holder, but no later than 14 days after such receipt. The trustee shall notify the debtor of any such change at least 7 days before putting the change into effect. Any current mortgage payment made by the debtor directly to the mortgagee shall be deducted from the amounts due to be paid to the trustee under this plan.

-NONE-

The total of all current mortgage payments to be made by the trustee under the plan is estimated to be $ 0.00 . [Enter this amount on Line 2b of Section H.]

3.1. *Other secured claims secured by value in collateral.* All secured claims, other than mortgage claims treated above and claims treated in Paragraph 3.2, are to be paid in full during the plan term, with interest at an annual percentage rates and in the fixed monthly amounts specified below regardless of contrary proofs of claim (subject to reduction with the consent of the creditor):

2

Software Copyright (c) 1996-2016  Best Case, LLC – www.bestcase.com

Best Case Bankruptcy

Case 17-01862 Doc 62-1 Filed 03/14/18 Entered 03/14/18 15:45:21 Desc Exhibit
Page 4 of 90

(a) Creditor: <u>Wells Fargo Bank, N.A.</u>  Collateral:<u>Items Purchased from Four Seasons Htg & Clg</u>
Amount of secured claim: $ <u>617.93</u> APR <u>3.5</u> %   Fixed monthly payment:$ <u>52.48</u> ;
Total estimated payments, including interest, on the claim: $<u>629.71</u>. ☐ Check if non-PMSI

[All claims in the debtor's Schedule D, other than mortgages treated above and claims for which
the collateral has no value, must be listed in this paragraph.]

The total of all payments on these secured claims, including interest, is estimated to be $ <u>629.71</u> .
[Enter this amount on Line 2c of Section H.]

*3.2 Other secured claims treated as unsecured.* The following claims are secured by collateral
that either has no value or that is fully encumbered by liens with higher priority. No payment
will be made on these claims on account of their secured status, but to the extent that the claims
are allowed, they will be paid as unsecured claims, pursuant to Paragraphs 6 and 8 of this
section.
-NONE-

*4. Priority claims of debtor's attorney.* Payable in amounts allowed by court order. The total
claim of debtor's attorney is estimated to be $ <u>0.00</u> . [Enter this amount on Line 2d of Section H.]

*5. Mortgage arrears.* Payable as set forth below, regardless of contrary proofs of claim, except
that the arrears payable may be reduced either with the consent of the mortgagee or by court
order, entered on motion of the debtor with notice to the trustee and the mortgagee. Any such
reduction shall be effective 14 days after either the trustee's receipt of a notice of reduction
consented to by the mortgagee or the entry of a court order reducing the arrearage.
-NONE-

*6. Allowed priority claims other than those of the debtor's attorney.* Payable in full, without
interest, on a pro rata basis. The total of all payments on non-attorney priority claims to be made
by the trustee under the plan is estimated to be $ <u>0.00</u> . [Enter this amount on Line 2f of Section
H.] Any claim for which the proof of claim asserts both secured and priority status, but which is
not identified as secured in Paragraphs 2, 3.1, or 3.2 of this section, will be treated under this
paragraph to the extent that the claim is allowed as priority claim.

*7. Specially classified unsecured claim.* A special class consisting of the following non-priority
unsecured claim:  <u>-NONE-</u>  shall be paid at <u>N/A</u> % of the allowed amount. The total of all
payments to this special class is estimated to be $ <u>N/A</u> . [Enter this amount on Line 2g of
Section H.]

Reason for the special class: <u>N/A</u> .

*8. General unsecured claims (GUCs).* All allowed nonpriority unsecured claims, not specially
classified, including unsecured deficiency claims under 11 U.S.C. § 506(a), shall be paid, pro
rata, ☒ in full, /or/ ☐ to the extent possible from the payments set out in Section D, but not less
than <u>N/A</u> % of their allowed amount. [Enter minimum payment percentage on Line 4b of
Section H.] Any claim for which the proof of claim asserts secured status, but which is not
identified as secured in section C, or Paragraphs 2, 3.1, 3.2 or 5 of this section, will be treated
under this paragraph to the extent that the claim is allowed without priority.

*9. Interest.* ☒ Interest shall not be paid on unsecured claims /or/ ☐ interest shall be paid on
unsecured claims, including priority and specially classified claims, at an annual percentage rate
of <u>N/A</u> % [Complete Line 4d of Section H to reflect interest payable.]

3

Case 17-01862    Doc 65    Filed 07/03/18    Entered 07/03/18 10:40:05    Desc Main
Document    Page 5 of 30
Case 17-01862    Doc 62-1    Filed 05/04/18    Entered 05/14/18 15:45:21    Desc Exhibit
Page 9 of 34
Case 17-01862    Doc 41    Filed 05/04/17    Entered 05/04/17 14:05:08    Desc Main
Document    Page 4 of 5

**Section F.**
*Priority*

The trustee shall pay the amounts specified in Section E of this Plan in the following order of priority, with claims in a given level of priority reduced proportionately in the event of insufficient plan payments: (1) trustee's fee; (2) current mortgage payments; (3) secured claims listed in Section E, Paragraph 3.1; (4) priority claims of the debtor's attorney; (5) mortgage arrears; (6) priority claims other than those of the debtor's attorney; (7) specially classified non-priority unsecured claims; and (8) general unsecured claims.

**Section G.**
*Special terms*

Notwithstanding anything to the contrary set forth above, this Plan shall include the provisions set forth in the box following the signatures. The provisions will not be effective unless there is a check in the notice box preceding Section A.

**Section H.**
*Summary of payments to and from the trustee*

(1) Total payments from the debtor to the Chapter 13 trustee (subject to Paragraph 2 of Section D) ........................................... $ 118,200.00

(2) Estimated disbursements by the trustee for non-GUCs (general unsecured claims):

|  |  |  |
|---|---|---|
| (a) Trustee's fees | $ | 5,910.00 |
| (b) Current mortgage payments | $ | 0.00 |
| (c) Payments of other allowed secured claims | $ | 629.71 |
| (d) Priority payments to debtor's attorney | $ | 0.00 |
| (e) Payments of mortgage arrears | $ | 0.00 |
| (f) Payments of non-attorney priority claims | $ | 0.00 |
| (g) Payments of specially classified unsecured claims | $ | 0.00 |
| (h) Total *[add Lines 2a through 2g]* | $ | 6,539.71 |

(3) Estimated payments available for GUCs and interest during initial plan term *[subtract Line 2h from Line 1]* .......................... $ 111,660.29

(4) Estimated payments required after initial plan term:

|  |  |  |
|---|---|---|
| (a) Estimated total GUCs, including unsecured deficiency claims under § 506(a) | $ | 111,613.00 |
| (b) Minimum GUC payment percentage | | 100 % |
| (c) Estimated minimum GUC payment *[multiply line 4a by line 4b]* | $ | 111,613.00 |
| (d) Estimated interest payments on unsecured claims | $ | 0.00 |
| (e) Total of GUC and interest payments *[add Lines 4c and 4d]* | $ | 111,613.00 |
| (f) Payments available during initial term *[enter Line 3]* | $ | 111,660.29 |
| (g) Additional payments required *[subtract Line 4f from Line 4e]* | $ | -47.29 |

(5) Additional payments available:

|  |  |  |
|---|---|---|
| (a) Debtor's monthly payment less trustee's fees and current mortgage payments made by the trustee | $ | N/A |
| (b) Months in maximum plan term after initial term | | N/A |
| (c) Payments available *[multiply line 5a by line 5b]* | $ | N/A |

4

Case 17-01862   Doc 65   Filed 07/03/18   Entered 07/03/18 10:40:05   Desc Main
Case 17-01862   Doc 62-1   Filed 05/04/18   Entered 05/04/18 15:45:21   Desc Exhibit
Document   Page 6 of 30
Page 10 of 34

Case 17-01862   Doc 41   Filed 05/04/17   Entered 05/04/17 14:05:08   Desc Main
Document   Page 5 of 5

**Section I.**
*Payroll Control*
☐ A check in this box indicates that the debtor consents to immediate entry of an order directing the debtor's employer to deduct from the debtor's wages the amount specified in Paragraph 1 of Section D and to pay that amount to the trustee on the debtor's behalf. If this is a joint case, details of the deductions from each spouse's wages are set out in Section G.

**Signatures**   **Debtor(s) [Sign only if not represented by an attorney]**

_____   _____   Date _____

Debtor's Attorney   /s/ Joseph S. Davidson   Date   May 4, 2017

*Attorney Information (name, address, telephone, etc.)*
Joseph S. Davidson
Sulaiman Law Group, Ltd.
900 Jorie Boulevard
Suite 150
Oak Brook, IL 60523
630-575-8181
Fax: 630-575-8188

**Special Terms** *[as provided in Paragraph G]*

1. Debtors shall surrender the real property located at 329 Lancelot Ct. Bolingbrook, IL 60440 to Nationstar Mortgage, LLC, in full satisfaction of its secured claim.

2. Debtors shall surrender the real property located at 508 Abe Street Joliet, IL 60432 to Select Portfolio Servicing, in full satisfaction of its secured claim.

3. The trustee shall make no payments on the claim of Mercedes-Benz Financial for it's lien on the 2013 Mercedes-Benz ML350 as Debtors shall continue to make the monthly contractually due payments directly to said creditor.

4. The trustee shall make no payments on the claim of U.S. Bank, N.A. for it's lien on the 2015 Chevrolet Suburban LS Sport Utility 4D as Debtors shall continue to make the monthly contractually due payments directly to said creditor.

5. The trustee shall make no payments on the student loan claims of Access Group, Inc/DB;AGFL42.2 on behalf of MHEAC; ACS/Access Grp; Sallie Mae; Navient Funding; or Navient Funding/PHEAA as the Debtors shall continue to make the monthly contractually due payments directly to said creditors.

Software Copyright (c) 1996-2016 Best Case, LLC - www.bestcase.com          Best Case Bankruptcy

# EXHIBIT "B"

9010074 1

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

| | |
|---|---|
| BORROWER(S) NAME(S) AND ADDRESS: | LENDER'S NAME AND ADDRESS: |

A TRUE COPY
CERTIFICATION
IN LAST PAGE

BORROWER(S) NAME(S) AND ADDRESS:

JULIUS L. JONES
TANESHA S. JONES
6 KINGSBROOK COURT
BOLINGBROOK, IL 60440

LENDER'S NAME AND ADDRESS:

THE CIT GROUP/CONSUMER FINANCE, INC.
377 EAST BUTTERFIELD ROAD
SUITE 925
LOMBARD, IL 60148

MIN: ▆▆▆▆▆8786

ACCOUNT NO.: ▆▆4378                CREDIT LIMIT: $ 78,000.00
DATE: 02/02/07
FINAL PAYMENT DATE (no later than):         02/07/32

This is the Agreement ("Agreement") that governs my Home Equity Line of Credit Account ("Account") with you, The CIT Group/Consumer Finance, Inc. The words "I", "me" and "my" refer to the borrower ("Borrower") signing this Agreement. If more than one Borrower signs this Agreement, the words "I", "me", "my" and "us" refer to all who sign, separately and together. The words "you" and "your" refer to The CIT Group/Consumer Finance, Inc.

## I. LINE OF CREDIT.

A. The scheduled term of my Account is 25 years. During the first 10 years (the "Draw Period") of the 25-year loan term, I will be permitted, subject to the limitations contained in this Agreement, to borrow money from time to time in amounts which, in the aggregate, do not exceed my Credit Limit shown above by any method set forth in this paragraph. I must take an initial loan advance of no less than $100.00. During the Draw Period, I must make monthly payments as described in paragraph 3.A. below. After the Draw Period expires, I will no longer be permitted to obtain additional loan advances from my Account. During the last 15 years (the "Repayment Period") of the 25 year loan term, I must repay the outstanding balance on my Account as described in paragraph 3.B. below. You will make loan advances by (i) honoring drafts which you have provided to me and which I have written in amounts of $250.00 or more ("Home Equity Checks"); (ii) providing me with a cashier's check for no less than $250.00 drawn on a bank, at my request and in accordance with procedures you establish; (iii) paying any closing cost charges described and disclosed in paragraph 7 below; (iv) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the mortgage which secures my obligations under this Agreement and encumbers my real property described in paragraph 8 below, dated as of the same date as this Agreement, from me to you (the "Mortgage"); and (v) any other additional method or procedure you establish. You shall not be required to make any loan advances to me if you exercise your right to suspend or terminate my Account upon certain conditions or events described in this Agreement. You will not make any loan advances before the fourth business day following the signing of this Agreement or after the expiration of the Draw Period. I may not access my Account by any other method.

B. I understand that my Home Equity Checks will be payable through a bank which will act as your disbursement agent. My Home Equity Check will be honored only if you, subject to the terms of this Agreement, make a loan advance to honor my Home Equity Check. I agree that the Home Equity Checks are only a means to obtain loan advances and that the bank acting as your disbursement agent has not opened a checking account for me, and I cannot deposit funds into this account.

## 2. OBLIGATION TO PAY.

A. I promise to pay to you or your order, when and as due, all loan advances made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges owed to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so, such payments will be credited as of the day of receipt.

B. I may pay all or any part of my outstanding balance at any time, without penalty. However, I must pay you each month at least the "Current Minimum Payment" for each billing cycle plus any "Amount Past Due" upon the receipt of my periodic statement. I will not make any Account payments with my Home Equity Checks.

C. I understand that each Account payment check I send you that is intended to reduce the principal balance will not be available for additional loan advances on my credit line until the 14th calendar day after the day you have posted my check. Such payments will be credited as of the date you receive my payment. You do not process payments on Saturdays, Sundays, or bank holidays, and payment checks received on such days will be considered received by you and posted to my account on the next business day.

### 3. CALCULATION OF MINIMUM MONTHLY PAYMENTS DURINT DRAW PERIOD AND REPAYMENT PERIOD.

A. During the Draw Period, my "Current Minimum Payment " equals the finance charges that have accrued on the outstanding balance for the billing cycle covered by my periodic statement. Payment of the "Current Minimum Payment" will not reduce the outstanding principal balance on my Account during the Draw Period. In addition, I must pay to you immediately any "Amount Past Due" plus any amounts on my Account which exceed my Credit Limit under this Agreement, without demand or notice from you.

B. During the Repayment Period, my "Current Minimum Payment" will be equal to the greater of (a) the sum of 1/180th of the principal balance that was outstanding at the end of the Draw Period plus the finance charge I owe on the Account for the billing cycle covered by my periodic statement, or (b) $50. However, if my outstanding balance is less than $50, I must pay you the full outstanding balance. I must pay to you immediately any "Amount Past Due" on my Account.

### 4. CREDIT LIMIT.
My Credit Limit under this Agreement is shown above (my "Credit Limit"). I promise not to write Home Equity Checks or obtain loan advances in any other way permitted by this Agreement, which will cause my unpaid loan balance to exceed my Credit Limit. You can refuse to make loan advances or honor Home Equity Checks that would cause my unpaid loan balance to exceed my Credit Limit. You may but are never required to make loan advances or honor Home Equity Checks for up to, but no more than, $500 over my Credit Limit.

### 5. ANNUAL PERCENTAGE RATE.

A. The initial Daily Periodic Rate and the initial Annual Percentage Rate disclosed in this paragraph 5.A. are "discounted" initial rates. This means that these rates are lower than the rates which would be in effect if the formula set forth in paragraph 5.B. below had been used. The initial Daily Periodic Rate is ___0.02123___ %. The initial ANNUAL PERCENTAGE RATE is ___7.750___ %. If the initial rates had been determined using the formula set forth in paragraph 5.B. below, the initial Daily Periodic Rate would be ___0.03014___ % and the ANNUAL PERCENTAGE RATE would be ___11.000___ %. The initial discounted rate will be in effect from the date of this Agreement until the end of the ___THIRD___ billing cycle. Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 5.B. below.

B. The method of calculating the Annual Percentage Rate applies to both the Draw Period and the Repayment Period, but does not reflect any finance charge not calculated based on the Daily Periodic Rate. My Annual Percentage Rate may increase or decrease beginning with the first billing cycle after my "discounted" rate has expired, according to the following formula:

The ANNUAL PERCENTAGE RATE for each billing cycle will be equal to the "Index" plus a "Margin" of ___2.750___ percentage points. The "Index" will be the "Prime Rate" (the highest rate in the case of split rates) as published in the "Money Rates" table of The Wall Street Journal as of 7 days prior to the end of the billing cycle immediately preceding the current billing cycle (or as of the immediately preceding business day if such day is a non-business day). Each change in my Daily Periodic Rate and Annual Percentage Rate, if any, will take effect automatically on the first day of the billing cycle, without prior notice to me, and will apply to new loan advances and to the outstanding balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid balance and all new loan advances I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the ANNUAL PERCENTAGE RATE divided by 365. If The Wall Street Journal ceases to publish the Index, you will choose a substitute index that is based upon comparable information and, if necessary, a substitute margin, so that the change in the index results in substantially the same rate as required under the previous index.

C. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The ANNUAL PERCENTAGE RATE will never be greater than 18% during the entire term of my Account or the highest rate permitted by law, whichever is lower.

D. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay an additional finance charge. Also, the "Current Minimum Payment" on my periodic statement may increase.

### 6. FINANCE CHARGE.

A. (1) Finance charge calculated on Daily Periodic Rate applicable to billing cycle. The finance charge begins to accrue on my Account from the time a loan advance is posted to my Account. The finance charge will continue to accrue for the period any loan advance creates an unpaid balance. There is no free ride period.

02/01/07     16:02     200567J

2-2149B

K. I will not break any other promise made in this Agreement or in the Mortgage such as:

    (1) my promise not to make Account payments with my Home Equity Checks;
    (2) my promise not to exceed my Credit Limit; and
    (3) my promise not to be in default of the Mortgage.

**14. COSTS OF COLLECTION.** I must pay for your reasonable and actual costs of collection, such as your costs and your reasonable attorneys' fees. A finance charge will continue to accrue at the Annual Percentage Rate in effect from time to time as provided in this Agreement after I default and before and after you obtain a judgment against me.

**15. YOUR AND MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOAN ADVANCES.**

A. Termination by Me. I may terminate my right to obtain loan advances by sending you a written notice which will become effective upon receipt by you. I may suspend my right to obtain loan advances pursuant to paragraph 11.D. above.

B. Termination by You. You may terminate or suspend my right to future advances under my Account by exercising your termination rights or suspension rights in paragraphs 11 and 12 above.

C. Effect of Termination. Notwithstanding any suspension or termination of my right to obtain future loan advances under this Agreement, I will remain obligated to pay you all amounts which I owe under this Agreement, and to perform all of my obligations under this Agreement and the Mortgage. My obligation to pay you all amounts which I owe under this Agreement includes, but is not limited to, my obligation to pay the "Current Minimum Payment" shown on each monthly periodic statement which you send to me. I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 12 above. I must return unused Home Equity Checks to you upon termination.

**16. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

    (1) you may make any change I agree to in writing;
    (2) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loan advances;
    (3) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the due date of the "Current Minimum Payment", the day of the month on which Index values are measured to determine my rate, and the balance computation method, and
    (4) you may make any changes to this Agreement permitted by law if an event under paragraph 12.A. above occurs.

B. You may make the changes described in paragraphs 16.A.(2) and (3) by notifying me of the change. The change will become effective as described in the notice you send me and will apply to amounts I owe when the change becomes effective, as well as to new loan advances.

**17. OTHER PROVISIONS.**

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend the Agreement without in any way affecting my or any non-borrower co-owner's (or persons having an interest arising by operation of law who have signed the Mortgage) obligations under this Agreement. My rights under this Agreement belong only to me. I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Mortgage at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verification and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Mortgage as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax advisor regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of Illinois.

02/01/07    16:02    2005673

2-2149F

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Jurisdiction. I irrevocably consent to the exclusive jurisdiction of the courts of Illinois and/or a United States District Court for a District in Illinois in all actions between you and me. I irrevocably agree to service of process by certified mail, return receipt requested to me at my last address appearing on your records.

G. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Mortgage) you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid balance of the Account and a finance charge will be charged at the Annual Percentage Rate in effect from time to time as calculated in this Agreement. I agree to pay these costs and finance charge on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

H. WAIVER OF JURY TRIAL. I WAIVE MY RIGHT TO A JURY TRIAL.

I. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

J. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except such notices as are required by the Federal Truth in Lending Act and Federal Regulation Z, and such other notices which cannot be waived by law.

K. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" or "including, but not limited to," is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

L. Payment Marked "Payment in Full". I agree not to submit any checks to you in payment of my Account marked "Payment in Full" unless the amount of the check is sufficient to pay my Account in full as of the date you receive the payment. If I do submit a check to you marked "Payment in Full" for a sum less than the amount necessary to pay my Account in full, you may accept it as a partial payment and will not be bound by the "Payment in Full" notation. I agree that communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to the address for Billing Error Inquiries on my periodic statement.

M. Lost or Stolen Checks. If my Home Equity Checks are lost or stolen, I will notify you immediately either by phoning on business days between 8:00 A.M. and 5:00 P.M. CST at (800) 621-1433 or by writing to you at the address for Billing Error Inquiries on my periodic statement.

N. Stopping payments on checks.

(1) If more than one person has signed this Agreement, each of us will be allowed to stop payment on a Home Equity Check even if the person making the stop payment order is not the person who wrote the Home Equity Check. All stop payment orders must be made either by phoning on business days between 8:00 A.M. and 5:00 P.M. CST at (800) 621-1433 or by writing to you at the address for Billing Error Inquiries on my periodic statement.

(2) My stop payment order must include my Account number, the date of the Home Equity Check, the name of the payee, the exact amount of the check and the preprinted check number shown at the top of the Home Equity Check.

(3) My stop payment order takes effect after you have a reasonable time to record it on my Account. If my stop payment order is oral, I must confirm it in writing or it will be removed after fourteen days. My written order will be effective for six months. After six months, I must renew my written order if I wish it to continue.

O. Returning Checks. My Home Equity Checks will not be returned to me with my monthly statement. If I need a copy of my cancelled Home Equity Checks, I can request it by writing to you at the address for Billing Error Inquiries on my periodic statement.

02/01/07    16:02    2005673

2-2149G

P. **Enforcement.** You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement without losing them or affecting them. You are not obligated to exercise any of your rights or remedies if I default under this Agreement. Your election to exercise any right or remedy does not constitute a waiver of your right to exercise any right, other right or remedy, nor will your failure to exercise a right or remedy following a default prevent your exercise of that right or remedy of any other right or remedy in the event of a subsequent default.

Q. **Notices.** Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular mail, addressed to me at my address set forth on the first page of this Agreement or at such other address as I may designate by written notice to you as provided in this paragraph 17.Q. and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by regular mail, addressed to The CIT Group/Consumer Finance, Inc., 715 S. Metropolitan Avenue, Oklahoma City, Oklahoma 73108-2090 or such other address as you may designate by written notice to me as provided in this paragraph 17.Q.

R. **Joint and Several Liability.** If more than one person signs this Agreement, each of us will be bound by this Agreement and will be jointly and severally liable for amounts advanced under this Agreement.

S. **Loan Charges.** If a law, which applies to this Agreement and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with this Agreement exceed the permitted limits then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the principal I owe under this Agreement or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

BY SIGNING BELOW ON THE DATE INDICATED ON THE FIRST PAGE OF THIS AGREEMENT, (1) I AGREE THAT I HAVE READ THIS AGREEMENT, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THE AGREEMENT.

I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "FEDERAL DISCLOSURES - IMPORTANT TERMS OF THE CIT GROUP/CONSUMER FINANCE, INC. HOME EQUITY LINE OF CREDIT PLAN", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE", TWO COPIES OF A COMPLETED "NOTICE OF RIGHT TO CANCEL MY ACCOUNT" AND ALL OTHER DISCLOSURES REQUIRED TO BE GIVEN TO ME BY YOU BY EITHER STATE OR FEDERAL LAW.

_____
Borrower's Signature

6 Kingsbrooke Ct Bolingbrook IL
60440
Address

_____
Borrower's Signature

6 Kingsbrooke Ct. Bolingbrook
IL 60410
Address

I certify this to be a true and correct copy of the
original this ____ day of ____, 20___

_____
Notary Public

Page 8 of 9

02/01/07     1cc02     2005673
2-2140H

## MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE.

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

### I Must Notify You in Case of Errors or Questions About My Bill.

If I think my bill is wrong, or if I need more information about a transaction on my bill, I must write you on a separate sheet at the address listed on my bill. I must write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.

In my letter, I must give you the following information:
* My name and account number.
* The dollar amount of the suspected error.
* I should describe the error and explain, if I can, why I believe there is an error.
If I need more information, I must describe the item I am not sure about.

### My Rights and Your Responsibilities After You Receive My Written Notice.

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my Credit Limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

Loan number: ████4878

Borrower: JULIUS L JONES

Note Date: 2/2/2007

## ALLONGE TO NOTE

I certify this to be a true and correct copy of the
original this ____ day of _____, 20 ____

_____
Notary Public

PAY TO THE ORDER OF

~~American~~ Bank, FSB

WITHOUT RECOURSE

THE CIT GROUP/CONSUMER FINANCE, INC.

_____
Authorized Signature

FRANK LENARTOWICZ
Assistant Vice President

# ALLONGE TO NOTE

| | |
|---|---|
| Account Number: | 5329 |
| Allonge to Note dated: | 2/2/2007 |
| And Executed by: | Julius Jones<br>Tanesha S Jones |
| Property Address: | 6 KINGSBROOK COURT<br>BOLINGBROOK, IL 60440 |
| Loan Amount: | $78,000.00 |
| Pay to the order of: | BBR Investments LLC |
| Without recourse: | American Bank, FSB |

By:

Title:    Jim Plack

President and CEO, American Bank, FSB

# EXHIBIT "C"

R2015110478
KAREN A. STUKEL
WILL COUNTY RECORDER
RECORDED ON
12/30/2015  2:32:20 PM
REC FEE: 38.75
IL RENTAL HSNG: 9.00
PAGES: 3
MSB

RECORDING REQUESTED BY:
AND WHEN RECORDED MAIL TO:

BBR INVESTMENTS LLC
100 NORTH CENTER STREET
NEWTON FALLS, OH  44444
(330) 872-0918 Ext. 3501
Attn:  Sonia Ortega

BBR.10054

*THIS SPACE FOR RECORDER'S USE ONLY*

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST/SECURITY AGREEMENT

Assignment of Mortgage/Deed of Trust/Security Agreement

Loan: ██████5329 (formerly ██████4878)

FOR VALUE RECEIVED, American Bank, whose address is 9001 Edmonston Road, Suite 100,
Greenbelt, Maryland, it's successors and assigns, herby assign and transfer to BBR
INVESTMENTS LLC its successors, and/or assigns, all of its right, title and interest in and to a
certain mortgage/deed of trust/security agreement executed by Julius Jones and Tanesha S
Jones, in the original amount of seventy-eight thousand and 00/100 ($78,000.00)and bearing
the date of 2/2/2007 and recorded on 2/15/2007 in the Recorder's Office of  WILL COUNTY,
State of ILLINOIS: INSTRUMENT 2007026024    PIN 0050004780000019
encumbering the real property known as:

6 KINGSBROOK COURT
BOLINGBROOK, ILLINOIS 60440

See Exhibit A Legal Description

Signed of the 5th Day of November, 2015

American Bank, FSB

By _____

William Godfrey, Vice President

State of Maryland}
County of Prince George's) ss:

On the 5th Day of November, 2015, before me, a Notary Public, personally appeared
William Godfrey, to me known, who being duly sworn, did say that he is the Vice President of
American Bank  and that said instrument was signed on behalf of said corporation.

_____
Notary Public

JACQUELYN D. HUNT-ERVIN
Notary Public
State of Maryland
Prince George's County
My commission exp. March 31, 2018

prepared by: Christopher Kashuba
American Bank
9001 Edmonston Road, Suite 100
Greenbelt, MD 20770

Our File No. BBR10054

EXHIBIT "A"

LEGAL DESCRIPTION

Lot 92 in Huntington Estates Unit 2A, being a Subdivision of part of the Southwest 1/4 of Section 16,
Township 37 North, Range 10, East of the Third Principal Meridian, according to the Plat thereof
recorded July 29, 1997 as Document Number R97-63713 and Certificate of Correction recorded August
19, 1997 as Document Number R97-70720, in Will County, Illinois.

**R2015110415**
KAREN A. STUKEL
WILL COUNTY RECORDER
RECORDED ON
12/30/2015 1:02:16 PM
REC FEE: 38.75
IL RENTAL HSNG: 9.00
PAGES: 3
KAK

RECORDING REQUESTED BY:
AND WHEN RECORDED MAIL TO:

BBR INVESTMENTS LLC
100 NORTH CENTER STREET
NEWTON FALLS, OH  44444
(330) 872-0918 Ext. 3501
Attn:  Sonia Ortega

BBR10054

*THIS SPACE FOR RECORDER'S USE ONLY*

## ASSIGNMENT OF MORTGAGE/DEED OF TRUST/SECURITY AGREEMENT

## Assignment of Mortgage/Deed of Trust/Security Agreement

Loan: ▓▓▓5329 (formerly ▓▓▓4878)

MIN: ▓▓▓▓▓8786

MERS Phone: 1-888-679-6377

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for THE CIT GROUP/CONSUMER FINANCE, INC. its successors and assigns, herby assign and transfer to American Bank, FSB, its successors, and/or assigns, all of its right, title and interest in and to a certain mortgage/deed of trust/security agreement executed by Julius Jones and Tanesha S Jones, in the original amount of seventy-eight thousand and 00/100 ($78,000.00)and bearing the date of 2/2/2007 and recorded on 2/15/2007 in the Recorder's Office of WILL, COUNTY, State of ILLINOIS, as INSTRUMENT 2007026024 encumbering the real property known as:      PIN  0050004780000019

6 KINGSBROOK COURT
BOLINGBROOK, ILLINOIS 60440

See Exhibit A Legal Description

Signed of the 1ˢᵗ Day of December, 2015

Mortgage Electronic Registration Systems, Inc. ("MERS")

By _____

Assistant Secretary

State of Maryland}
County of Prince George's} ss:

On the 1ˢᵗ Day of December, 2015, before me, a Notary Public, personally appeared Don Gallo, to me known, who being duly sworn, did say that he is the Vice President of American Bank and the Assistant Secretary of Mortgage Electronic Registration Systems, Inc. and that said instrument was signed on behalf of said corporations.

_____
Notary Public

prepared by: Christopher Kashuba
American Bank
9001 Edmonston Road, Suite 100
Greenbelt, MD 20770

Our File No. B3R10054

BARBARA A. PHIPPS
NOTARY PUBLIC
PRINCE GEORGE'S COUNTY
MARYLAND
MY COMMISSION EXPIRES JUNE 10, 2018

EXHIBIT "A"

LEGAL DESCRIPTION

Lot 92 in Huntington Estates Unit 2A, being a Subdivision of part of the Southwest 1/4 of Section 16, Township 37 North, Range 10, East of the Third Principal Meridian, according to the Plat thereof recorded July 29, 1997 as Document Number R97-63713 and Certificate of Correction recorded August 19, 1997 as Document Number R97-70720, in Will County, Illinois.

LAURIE MCPHILLIPS  5P  R 2007026024
Will County Recorder                Page 1 of 5

MSB Date 02/15/2007    Time 11:03:17
Recording Fees:             25.75
IL Rental Hsng Support Prog:  10.00

I certify this to be a true and correct copy of the
original this ___ day of _____, 20___.

_____
Notary Public

# MORTGAGE

** NOTE ** This space is for RECORDER'S USE ONLY

| NAME AND ADDRESS OF MORTGAGOR(S): | Lender: |
|---|---|
| JULIUS L JONES<br>TANESHA S JONES<br>MARRIED<br><br>6 KINGSBROOK COURT<br>BOLINGBROOK, IL 60440<br>MIN: ████████████8786 | THE CIT GROUP/CONSUMER FINANCE, INC.<br>377 EAST BUTTERFIELD ROAD<br>SUITE 925<br>LOMBARD, IL 60148<br>Mortgagee: MERS<br>P.O. BOX 2026<br>FLINT, MI 48501-2026 |

| LOAN NUMBER | DATE |
|---|---|
| ████████4878 | 02/02/07 |

| DATE FINAL PAYMENT DUE | Maximum Amount of Unpaid Loan Indebtedness Exclusive of Interest and other Charges secured under this Mortgage. ("Principal Balance") |
|---|---|
| 02/07/32 | $ 78,000.00 |

The words "I," "me," and "my" refer to all Mortgagors indebted on that certain Home Equity Line of Credit Agreement and Disclosure Statement dated the date hereof ("Note") secured by this Mortgage. The words "you" and "your" refer to Lender and Lender's assignee if this Mortgage is assigned. "MERS" refers to Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the mortgagee under this Mortgage. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

MORTGAGE OF PROPERTY
    To secure payment of a Note I signed today promising to pay to your order the above Principal Balance together with interest at the interest rate in effect, from time to time, as set forth in the Note, each of the undersigned hereby releasing and waiving all rights under and by virtue of the homestead exemption laws of the State of Illinois, grants, mortgages and warrants to MERS and its successors and assigns, (solely as nominee for Lender and Lender's successors and assigns), with mortgage covenants, the real estate described below, all fixtures and personal property located thereon, and all present and future improvements on the real estate (collectively the "Property") which is located in the County of WILL _____ in the State of Illinois, as described in the legal description attached hereto as Exhibit A.

    Permanent Index Number:   12021640102
    Street Address:   6 KINGSBROOK COURT,  BOLINGBROOK, IL  60440

    Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Mortgage, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to

SEE PAGES 2, 3 AND 4 FOR ADDITIONAL IMPORTANT TERMS

02/01/07    16:02    2005673                                           Initial(s) X____  X____
-2-2174A (4/04) Illinois HELOC Mortgage                                           Page 1 of 4

1 of 5

take any action required of Lender including, but not limited to, releasing and canceling this Mortgage.

**TAXES - LIENS - INSURANCE - MAINTENANCE** - I will pay, when they are due and payable, all taxes, liens, assessments, obligations, water rates and any other charges against the Property, whether superior or inferior to the lien of this mortgage, maintain hazard insurance on the Property in your favor in a form and amount satisfactory to you and maintain and keep the Property in good repair at all times during the term of this mortgage. You may pay any such tax, lien, assessment, obligation, water rates, premium or other charge (including any charge to maintain or repair the Property) or purchase such insurance in your own name, if I fail to do so. The amount you pay will be due and payable to you from me on demand, will bear an interest charge at the interest rate set forth in the Note secured by this mortgage if permitted by law or, if not, at the highest lawful interest rate, will be an additional lien on the Property and may be enforced and collected in the same manner as the other obligations secured by this mortgage. The insurance carrier providing the insurance referred to above will be chosen by me subject to your approval which will not be unreasonably withheld. All insurance policies and renewals must be acceptable to you and must include a standard mortgagee clause. You will have the right to hold the policies and renewals. If you require, I will promptly give to you all receipts of paid premiums and renewal notices. In the event of a loss, I will give prompt notice to the insurance carrier and you. You may file proof of loss if not made promptly by me. Insurance proceeds will be applied to the restoration or repair of the Property damaged or, at your option, the insurance proceeds will be applied to the sums, secured by this mortgage, whether or not then due, with any excess paid to me. If I abandon the Property, or do not answer within ten (10) days, a notice from you that the insurance carrier has offered to settle a claim, then you may collect the insurance proceeds. The ten (10)-day period will begin when the notice is given.

**TITLE** - I warrant the title to the Property. I further warrant that the lien created by this mortgage is a valid and enforceable lien, subordinate only to any first Mortgage you have previously approved in writing and to easements and restrictions of record existing as of the date of this mortgage, and that during the entire term of indebtedness secured by this mortgage such lien will not become subordinate to anything else.

**CONDEMNATION** - The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation (the taking of my property for a public use) or any other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and will be paid to you and are subject to the lien of this mortgage. In the event of a taking of the Property, the proceeds will be applied to the sums secured by the mortgage, whether or not then due, with any excess paid to me. If the Property is abandoned by me, or if, after notice by you to me that the condemnor offers to make an award or settle a claim for damages, I fail to respond to you within ten (10) days after the date the notice is given, you are authorized to collect and apply the proceeds, at your option, either to the restoration or repair of the Property or to the sums secured by the mortgage, whether or not then due.

**CONSENT TO TRANSFER OR ALTERATION** - Except in those circumstances in which federal law otherwise provides, I will not, without your prior written consent, sell or transfer the Property or alter, remove or demolish the Property.

**DEFAULT** - If I default in paying any part of the obligations secured by this mortgage or if I default in any other way under this mortgage or if an Event of Default (as defined in the Note) occurs or if I default under the terms of any other security document covering the Property, the full unpaid principal balance and accrued and unpaid interest charge will become due immediately if you desire, without your advising me. I agree to pay all costs and disbursements (including reasonable attorney fees) to which you are legally entitled in connection with any suit to foreclose on or collect this mortgage. If any money is left over after you foreclose on this mortgage and deduct such costs and disbursements, it will be paid to the persons legally entitled to it, but if any money is still owing, I agree to pay you the balance.

**APPOINTMENT OF RECEIVER AND ASSIGNMENT OF RENTS** - I agree that you are entitled to the appointment of a receiver in any action to foreclose on this mortgage and you may also enter the Property and take possession of it, rent it if the Property is not already rented, receive all rents and apply them to the obligations secured by this mortgage. I assign all rents to you but you agree that I may continue to collect the rents unless I am in default under this mortgage or the Note.

**RIGHTS CUMULATIVE** - Your rights under this mortgage will be separate, distinct and cumulative and none of them will be in exclusion of any other nor will any act of yours be considered as an election to proceed under any one provision of this mortgage to the exclusion of any other provision.

**NOTICES** - I agree that any notice and demand or request may be given to me either in person or by mail.

**EXTENSIONS AND MODIFICATIONS** - Each of the undersigned agrees that no extension of time or other variation of any obligation secured by this mortgage will affect any other obligations under this mortgage.

**APPLICABLE LAW** - This mortgage is made in accordance with, and will be construed under, the laws of the State of Illinois, and applicable federal law.

*JULIUS JONES*                 **SEE PAGES 1, 3 AND 4 FOR ADDITIONAL IMPORTANT TERMS**
02/01/07     16:02     2005673
2-2174B

Initial(s)                                              Page 2 of 4

**FORECLOSURE** - In the event that any provision of this mortgage is inconsistent with any provision of the Illinois Mortgage Foreclosure, Law 735 ILCS 5/15-1101 et. seq., as amended ("Act"), the provisions of the Act shall take precedence over the provisions of this mortgage, but shall not invalidate or render unenforceable any other provision of this mortgage that can be construed in a manner consistent with the Act. If any provision of this mortgage shall grant you any rights or remedies upon my default which are more limited than the rights that would otherwise be vested in you under the Act in the absence of said provision, you shall be vested with the rights granted in the Act to the full extent permitted by law.

**MAXIMUM AMOUNT** - The maximum amount of principal, interest, future advances and other amounts (now or hereinafter owed) that shall be secured by this mortgage shall be double the original principal balance herein above stated.

**RESPONSIBLE PARTY TRANSFER ACT** - I represent and warrant that the Property does not contain any underground storage tanks or conditions which require notification or compliance with the Responsible Party Transfer Act of 1988, as amended 765 ILCS 90/1 et. seq., in conjunction with the execution and delivery of this mortgage.

**EXCESS INTEREST** - It being the intention of you and me to comply with the laws of the State of Illinois and applicable federal law, it is agreed that notwithstanding any provision to the contrary in the Note, this mortgage, or any of the other loan documents, no such provision shall require the payment or permit the collection of any amount ("Excess Interest") in excess of the maximum amount of interest permitted by law to be charged for the use or detention, or the forbearance in the collection, of all or any portion of the indebtedness hereby secured. If any Excess Interest is provided for, or is adjudicated to be provided for, in the Note, this mortgage, or any of the other loan documents, then in such event (a) the provisions of this paragraph shall govern and control; (b) I shall not be obligated to pay any Excess Interest; (c) any Excess Interest that you may have received hereunder shall, at your option, be (i) applied as a credit against the then unpaid principal balance under the Note, accrued and unpaid interest thereon (not to exceed the maximum amount permitted by law), or both, (ii) refunded to the payor thereof, or (iii) any combination of the foregoing; (d) the rate of interest under the Note shall be automatically subject to reduction to the maximum lawful rate allowed under the laws of Illinois or applicable federal law and the Note, this mortgage, and the other loan documents shall be deemed to have been, and shall be, reformed and modified to reflect such reduction in the rate of interest under the Note.

**RECEIPT OF COPY** - Each of the undersigned acknowledges receipt of a completed and signed copy of this mortgage.

**BINDING EFFECT** - This mortgage is binding on and inures to your, my and MERS' successors and assigns.

**REVOLVING CREDIT LOAN** -This mortgage is given to secure a revolving credit loan unless and until such loan is converted to an installment loan (as provided in the Note), and shall secure not only presently existing indebtedness under the Note but also future advances, whether such advances are obligatory or to be made at the option of mortgagee, or otherwise, as are made within 20 years from the date hereof, to the same extent as if such future advances were made on the date of the execution of this mortgage, although there may be no indebtedness secured hereby outstanding at the time any advance is made. The lien of this mortgage shall be valid as to all indebtedness secured hereby, including future advances, from the time of its filing for record in the recorder's or registrar's office of the county in which the Property is located. The total amount of indebtedness secured hereby may increase or decrease from time to time, but the total unpaid principal balance of indebtedness secured hereby (including disbursements that Mortgagee may make under this mortgage, the Note, or any other document with respect thereto) at any one time outstanding shall not exceed the Credit Limit provided in the Note (Principal Balance) plus interest thereon, and any disbursements made for payment of taxes, special assessment, or insurance on the Property and interest on such disbursements (all such indebtedness being hereinafter referred to as the maximum amount secured hereby). This mortgage shall be valid and have priority to the extent of the maximum amount secured hereby over all subsequent liens and encumbrances, including statutory liens, excepting solely taxes and assessments levied on the Property given priority by law. The Note contains provisions allowing for changes in the interest rate and minimum monthly payment of the loan and this mortgage shall secure all interest amounts accruing pursuant to those provisions.

**SEE PAGES 1, 2 AND 4 FOR ADDITIONAL IMPORTANT TERMS**

*JULIUS JONES*
*02/01/07      16:02      2005673*
*2-2174C*

Initial(s) X _____ X _____

Page 3 of 4

**CONVERSION TO FIXED LOAN** – Pursuant to the Note, Mortgagee may convert the outstanding indebtedness incurred thereunder to a fixed loan bearing interest at the rate set forth in the Note and payable in installments of principal and interest over a period as set forth therein and which shall in any event be due and payable on or before 20 years after the date of this mortgage. This mortgage is given to and shall secure such fixed loan.

### SEE PAGES 1, 2 AND 3 FOR ADDITIONAL IMPORTANT TERMS

_____ (Seal)
(Type or print name below signature)
**JULIUS L JONES**

_____ (Seal)
(Type or print name below signature)
**TANESHA S JONES**

_____ (Seal)
(Type or print name below signature)

### ACKNOWLEDGEMENT

STATE OF ILLINOIS
COUNTY OF _Will_

I, _William T. Carrigan_, certify that _Julius Jones_ [and _Tanesha Jones_, his/her spouse,] personally known to me to be the same person(s) whose name(s) is/are subscribed to the foregoing instrument, appeared before me this day in person and acknowledged that he/she/they signed and delivered the instrument as his/her/their free and voluntary act for the uses and purposes therein set forth, including the release and waiver of the right of homestead.

Dated: _February 2, 2007_.

Notary Public
[Seal]

OFFICIAL SEAL
WILLIAM T. CARRIGAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 4-24-2007

Upon recording mail to:
**Nationwide Title Clearing, Inc.**
**2100 Alt 19 North, Palm Harbor, Fl 34683      ATTN: Dusti Woodbury - CIT Unit**

02/01/07      16:02      2005673
2-2174D

_Page 4 of 4_

Property Address:   6 KINGSBROOK COURT
                    BOLINGBROOK, IL 60440

PIN #:   02-16-401-020-0000


Lot 92 in Huntington Estates Unit 2A, being a Subdivision of part of the Southwest
1/4 of Section 16, Township 37 North, Range 10, East of the Third Principal
Meridian, according to the Plat thereof recorded July 29, 1997 as Document Number
R97-63713 and Certificate of Correction recorded August 19, 1997 as Document Number
R97-70720, in Will County, Illinois.


CASE NUMBER      07-00914

(2) You compute the finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" of my Account (including current transactions). To determine the finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To calculate the "Average Daily Balance" in my Account on any day, you take the beginning balance of my Account each day, add any new loan advances and subtract any payments or credits and unpaid finance charges. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives you the "Average Daily Balance".

B.     Finance Charge not calculated based on Daily Periodic Rate. I have agreed to a pay a Prepaid FINANCE CHARGE for services rendered by a mortgage broker in the amount of $_____ 0.00 _____, which was determined in accordance with my agreement with my mortgage broker.

**7. CLOSING COSTS.**  I must pay various closing costs relating to the opening of my Account at time of settlement. The costs may be paid in cash, or I may finance part or all of them with an advance on my Account. The costs (including FINANCE CHARGES) that will be charged to open my Account are included on the attached Settlement Statement which is incorporated into and deemed to supplement this Home Equity Line of Credit Agreement and Disclosure Statement.

**8. REAL PROPERTY SECURITY.**  In order to secure the payment of all loan advances I obtain and the performance of all promises I make in this Agreement, I and all of the owners (or other persons who have an interest in the property arising by operation of law, which interest can be legally waived) of the real property are giving you a Mortgage covering my dwelling located at
6 KINGSBROOK COURT, BOLINGBROOK
Illinois (the "Real Property"). The Mortgage is security for my obligations under this Agreement.

**9. PERIODIC STATEMENTS.**  For any billing cycle in which I have an outstanding balance or a credit balance greater than $1.00, or during which a finance charge or other charge has been imposed, you will send me a periodic statement. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance", my Annual Percentage Rate, the amount of my "Current Minimum Payment", and the place and manner of making payments.

**10. PROPERTY INSURANCE.**  I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts against such risks (including, but not limited to, flood damage insurance, if required), and according to such terms as you may require in the Mortgage or otherwise. I may obtain property insurance from any company of my choice, except that you can refuse to accept an insurer for reasonable cause. I must name you as loss payee on such coverage. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

**II. YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOAN ADVANCES OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 11.B. below during the period that any of the following events or conditions occur:

(1) the value of the Real Property declines significantly below its appraised value for the purposes of this Account;
(2) you reasonably believe that I will not be able to meet the repayment requirements under my Agreement due to a material change in my financial circumstances, including, but not limited to, the following:

         a.  my general failure to pay my debts as they become due;
         b. a large increase in my indebtedness;
         c. a voluntary or involuntary application for my relief any bankruptcy or insolvency law;

02/01/07       16:52      2005673

2-2149C

d. an adverse change in my credit standing;

e. I am no longer creditworthy;

f. a significant reduction in my income; or

g. the sole borrower obligated on the Account dies.

(3) I am in default of any material obligation of this Agreement, including, but not limited to:

a. failing to provide you with updated financials or credit information or other information or documents you reasonably request;

b. refusing to allow you or your agent access to the Real Property to inspect it or to perform an appraisal;

c. failing to occupy the Real Property as my primary dwelling or moving out of the Real Property;

d. allowing any of the events or conditions listed in subparagraphs 1, 2, 3, 4, 5, 6, 7, 8, and 10 in Paragraph 12.A. below to occur;

e. allowing a judgment to be filed against me;

f. committing waste or otherwise destructively using or failing to maintain the Real Property;

g. breaking any promise in the Mortgage;

h. making a payment on my Account with my Home Equity Checks;

i. exceeding my Credit Limit; or

j. using the Real Property for any illegal purpose.

(4) government action prevents you from imposing the Annual Percentage Rate provided in this Agreement or impairs the priority of your Mortgage such that the value of the Mortgage is less than 120 percent of the Credit Limit; or

(5) a government authority has notified you that continued loan advances would constitute an unsafe business practice.

B. During the period in which a condition described in paragraph 11.A. above exists, you may refuse to make any additional loan advances or reduce my Credit Limit, or do both. You will mail or deliver written notice to me after you suspend my right to obtain additional loan advances or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my right to obtain additional loan advances during the Draw Period when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A. above or 12.A. below have occurred.

C. Before reinstating my right to obtain loan advances, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and I promise to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take these steps to verify that (i) the condition(s) that caused your suspension of my right to obtain loan advances from my Account or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of your Mortgage is not impaired.

D. If more than one Borrower signs this Agreement and any of us request in writing that you cease making loan advances, you may comply with such a request. If any of us sends you a written notice which indicates that any of us does not intend to be obligated for any further loan advances obtained by any of us, you may treat that notice as a request to stop making loan advances, and comply with the request. All of us who have signed this Agreement must join in any request to reinstate the right to obtain loan advances from the Account for such request to be effective. If all such persons subsequently request reinstatement of the loan advances, you must honor such a request unless a condition listed in paragraph 11.A. above or 12.A. below has occurred.

E. If an event or condition described in paragraph 11.A. above occurs which is also an event or condition described in paragraph 12.A. below, your rights and remedies described under paragraph 12.B. below apply, as well as your rights described in this paragraph 11.

12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.

A. Any of the following events or conditions is an event of default under the Agreement (an "Event of Default"):

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any payment due to you upon receipt of my periodic statement;

Page 4 of 9

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Mortgage;

(3) I sell or transfer title to the Real Property without first obtaining your written permission except as may be permitted by applicable state or federal law;

(4) I fail to maintain insurance on the Real Property as required under this Agreement or the Mortgage;

(5) I act or fail to act and as a result a lien senior to the lien of the Mortgage, or any portion of the lien, is filed against the Real Property;

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Real Property is taken through eminent domain, condemnation, or similar government taking;

(8) A prior lienholder on the Real Property begins foreclosure under its security document;

(9) The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10) I fail to pay taxes on the Real Property;

(11) One of the following events or similar events occur and such event adversely affects the Real Property or your rights in the Real Property such as, but not limited to:

        (a) A judgment is filed against me;
        (b) I commit waste or otherwise destructively use or fail
        to maintain the Real Property;
        (c) I die and am survived by another person obligated as
        a Borrower under this Agreement;
        (d) I move out of the Real Property; or
        (e) I fail to comply with or allow any of the events or
        conditions listed in subparagraphs B, E, F, or H in
        paragraph 13 below to occur.

B. If an Event of Default described in paragraph 12.A. above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate my rights to obtain loan advances under this Agreement;

(2) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(3) you may foreclose the Mortgage;

(4) you may refuse to pay or honor any of my Home Equity Checks; and

(5) you may take another action permitted by this Agreement, by law or in equity.

**13. MY OTHER IMPORTANT OBLIGATIONS.** I agree that:

A. I will provide you within 15 days of your request with updated financials or credit information or other information or documents that you reasonably request;

B. I will allow you or your agent access to the Real Property to inspect it or to perform an appraisal;

C. I will continue to occupy the Real Property as my primary dwelling;

D. I will not allow any of the events or conditions listed in paragraph 12.A. above to occur;

E. I will comply with all government orders or regulations relating to the use or occupancy of the Real Property;

F. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me;

G. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Mortgage;

H. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property;

I. I will not use or allow use of the Real Property for any illegal purpose;

J. I will not permit a lien to be filed which takes priority over the Mortgage for future advances made under this Agreement;

02/01/07   16:02   2005573

2-2149E